**STATE of Missouri, Respondent,**

v.

**India M. MERCHANT, Appellant.**

**No. ED 96435.**

Missouri Court of Appeals, Eastern District, Division One.

Dec. 20, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 23, 2012.

Application for Transfer Denied May 1, 2012.

Janet M. Thompson, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., John M. Reeves, Jefferson City, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Presiding Judge.

Defendant India Merchant appeals from the trial court's judgment and sentence after a bench trial on a charge of possession of a controlled substance with intent to distribute. We affirm.

### Background

Viewed in the light most favorable to the verdict, the evidence presented at trial was as follows. Around 8:30 p.m. on February 20, 2009, Officer Brandon McKinnon was patrolling an area known to have a high crime rate when he noticed a vehicle with the head- and tail-lights on parked in front of an apartment building. Tinted windows obscured any view into the vehicle, so McKinnon pulled up behind and "prior to" the vehicle at a perpendicular angle (forming an "L" shape) and approached the driver's side while shining a spotlight into the window to see if anyone was inside. Given the dangers of the area, he was "worried something might have been wrong." Defendant rolled down her window, and Officer McKinnon smelled a strong odor of marijuana. McKinnon asked Defendant and her friend to exit the vehicle. McKinnon searched the vehicle and discovered several "roaches," a handgun, and ten pills later determined to contain methylene-dioxymethamphetamine, commonly known as ecstasy. Defendant and her friend were arrested and transported to the police station where Defendant gave oral and written statements admitting that they intended to sell the pills for $10 each.

The State filed a complaint charging Defendant with possession of a controlled substance with intent to distribute. Defendant filed a pre-trial motion to suppress the physical evidence obtained from the vehicle as well as Defendant's statements at the station on the basis that McKinnon's search was unlawful. At the preliminary hearing, the associate circuit judge found no probable cause for the charge and ordered Defendant discharged from custody. In the order, the judge cited without analysis *Arizona v. Gant*, which holds that police may search a vehicle incident to arrest only when the arrestee is unsecured and within reach of the glove compartment. 556 U.S. 332, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009).

The State then obtained a grand jury indictment charging Defendant with the

same offense. Defendant again filed a motion to suppress the evidence and statements. The circuit court entertained the motion concurrent with the bench trial and ultimately denied the motion, reasoning that McKinnon's spotlight on the car wasn't a detention or seizure, but rather he approached for a routine safety check, and a reasonable suspicion of criminal activity arose as soon as he smelled marijuana emanating from Defendant's window.

The court found Defendant guilty and sentenced her to a prison term of five years, with a recommendation for shock time under § 559.115. Defendant appeals, alleging trial court error in that (1) the State's re-filing of the charge should be precluded by collateral estoppel and (2) the evidence should be suppressed because Officer McKinnon lacked reasonable suspicion to detain Defendant.

## Discussion

*Collateral Estoppel*

 Collateral estoppel precludes a party from re-litigating an issue previously adjudicated when: (1) the issue decided in the prior case was identical; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party sought to be estopped had a full and clear opportunity to litigate the issue in the prior suit. *Snyder v. State*, 288 S.W.3d 301, 303–04 (Mo.App. E.D.2009)

 Defendant submits that the doctrine of collateral estoppel barred the circuit court from considering her motion to suppress in the present case, brought by indictment, because the merits of the motion were litigated and resolved in the preliminary hearing on the earlier complaint before the associate circuit judge.[1] Thus, the State's re-filing of the charge after the evidence was implicitly suppressed in the first case amounts to judge-shopping and exceeds the bounds of justice and fair play. The State responds that the doctrine does not apply because the associate circuit judge's implicit ruling on the first motion was interlocutory and not an adjudication on the merits. Missouri precedent squarely on point supports the State's position.

An identical procedural history was presented in *State v. Pippenger*, 741 S.W.2d 710 (Mo.App. W.D.1987). The first trial court granted Pippenger's motion to suppress, the State dismissed the case and re-filed the charge, and Pippenger filed another motion to suppress. There, however, the second trial court again granted the motion, but this time on grounds of collateral estoppel as Defendant advocates here. The Western District reversed, holding that the doctrine was inapplicable because the motion to suppress was interlocutory and there was never a judgment on the merits. *Id.* at 711. The court further instructed that "prosecutors enjoy a discretionary right to dismiss a case at anytime. The prosecutor may re-file the charges as he sees fit so long as double jeopardy has not attached." *Id.* at 712. Double jeopardy attaches only when the

---

1. The associate circuit judge did not formally rule on the motion to suppress but simply found no probable cause for the charge. However, due to the reference to *Gant*, a suppression case, in the judge's order, the parties argue from the premise that the judge implicitly ruled on the motion. In any case, as further discussed below, there is "no irregularity in hearing evidence on a motion to suppress on more than one occasion; a trial court's ruling on a motion to suppress is interlocutory and remains so up to the time the evidence is admitted." *State v. Pugh*, 600 S.W.2d 114, 117 (Mo.App. S.D.1980)

trial begins, *i.e.,* when the jury is empanelled and sworn in. *Id.*

Similarly, in *State v. Maggard,* 906 S.W.2d 845 (Mo.App. S.D.1995), the State dismissed its case twice after unfavorable rulings on Maggard's motions to suppress but filed it a third time and ultimately prevailed. Following *Pippenger,* the Southern District upheld the judgment, reasoning that there was no prior adjudication resulting in a judgment on the merits. *Id.* at 848. "A trial court's ruling on a pretrial motion to suppress evidence is interlocutory." *Id.,* (citing *State v. Howell,* 524 S.W.2d 11, 19 (Mo. banc 1975)). "The fact that the state previously chose to *nolle prosequi* the same case against defendant after a trial court granted a motion to suppress evidence, rather than to appeal the ruling, is of no consequence." *Id.*

■ Defendant acknowledges the foregoing precedent but urges this court to consider other authorities as to what constitutes a final judgment. For example, the court should focus on "whether the *suppression issues* were fully litigated so that the state is collaterally estopped from opposing suppression. . . ." 50 C.J.S. Judgments § 1220. (emphasis added) However, this court is constitutionally bound to follow the edicts of the Missouri Supreme Court,[2] such as that stated in *Howell* above, and we decline to depart from longstanding Missouri precedent established by the Western and Southern Districts of this court. Accordingly, Defendant's first point is denied.

*Suppression*

For her second point, Defendant asserts that the trial court erred by denying her motion to suppress in that Officer McKinnon lacked a reasonable suspicion that criminal activity was afoot, in violation of Defendant's constitutional right against unreasonable search and seizure. U.S. Const. amend IV; Mo. Const. art. I § 15.

Appellate review of a trial court's ruling on a motion to suppress is "limited to whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous." *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). We view the facts and reasonable inferences therefrom in the light most favorable to the ruling and defer to the trial court's determination of credibility. *State v. Schroeder,* 330 S.W.3d 468, 472 (Mo. banc 2011). However, whether conduct violates the Fourth Amendment, including whether reasonable suspicion existed, is a question of law that this court reviews *de novo. Id.; State v. Goff,* 129 S.W.3d 857, 862 (Mo. banc 2004).

A police officer may approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "An officer may constitutionally 'seize' a person for a brief investigatory stop if he has a reasonably articulable suspicion that criminal activity is afoot." *U.S. v. Tuley,* 161 F.3d 513 (8th Cir.1998) (citing *Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868). In addition, "a law enforcement officer may approach a vehicle for safety reasons, or if a motorist needs assistance, so long as the officer can point to reasonable, articulable facts upon which to base his actions." *State v. Schroeder,* 330 S.W.3d 468, 473 (Mo.2011). The latter is described as law enforcement's "community caretaking function." *Id.* citing *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

■ Within the foregoing framework, the parties dispute whether—and, if so,

precisely when—Defendant was seized. Seizure occurs when "a reasonable person would have believed that he was not free to leave." *State v. Grayson*, 336 S.W.3d 138 (Mo. banc 2011). Stopping a car and detaining its occupants constitutes a seizure. *Id.* A person may also be seized by "voluntarily submitting to the assertion of police authority." *State v. Boykins*, 306 S.W.3d 626, 627 (Mo.App. E.D.2010).

■■ At trial, Defendant argued that she was detained from the moment Officer McKinnon approached the car and shined a spotlight into the windows. The State responded, and the trial court agreed, that Defendant was not detained at that point. Indeed, this court has held that the use of a spotlight does not amount to a seizure. *State v. Boykins*, 306 S.W.3d 626 (Mo.App. E.D.2010). Rather, the trial court here found that McKinnon was merely conducting a lawful safety check in his community caretaking function. In justifying his actions, McKinnon articulated the facts that it was nighttime in an area known for auto thefts, narcotics, and other crimes; the car was parked with the lights on, and the tinted windows obscured his view as to whether the vehicle was occupied; and he was "worried something might have been wrong" and thus "checking to make sure everything was okay." Deferring to the trial court's determinations of credibility, we cannot say that it clearly erred in viewing McKinnon's initial look as a safety check. Then, as McKinnon approached, Defendant voluntarily opened her window, at which time the odor of marijuana provided probable cause to search the vehicle. *State v. Fuente*, 871 S.W.2d 438, 442 (Mo. banc 1994). Thus, reviewing the arguments presented at trial, we find no Fourth Amendment violation.

■ On appeal, however, Defendant now contends that she was detained as soon as McKinnon parked his patrol car behind her, purportedly blocking her vehicle. The Eighth Circuit has held that blocking a citizen's vehicle with a squad car is a seizure under the Fourth Amendment. *U.S. v. Tuley*, 161 F.3d at 515. But Defendant failed to assert this argument at trial. Parties are bound by the position they took in the trial court and will not be heard on a different theory on appeal. *Barner v. Missouri Gaming Comm'n*, 48 S.W.3d 46, 50 (Mo.App. W.D. 2001). Moreover, even considering the merits of Defendant's new argument, the record does not support her version of the facts. McKinnon testified that he did not park his patrol car directly behind Defendant's car (which would have made a "T" shape), but rather "just prior to," perpendicular, and at an angle to hers, forming an "L" shape, such that he walked "at an angle" from his driver's side door to hers. Viewing the facts and all reasonable inferences therefrom in the light most favorable to the trial court's ruling, we cannot say that Defendant was detained when Officer McKinnon pulled up to her vehicle. Point denied.

### Conclusion

The trial court's judgment is affirmed.

ROY L. RICHTER and GARY M. GAERTNER, JR., JJ., concur.